

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NELSON PABON (1)<br>JEAN LOUI VARGAS-MALAVE (2)<br>JUAN CAMACHO MELENDEZ (3)<br>   A.K.A. "KENDO KAPONI"<br>   A.K.A. "ANTHONY"<br>RUBEN BENITEZ-MATIENZO (4)<br>JOSE LUIS GASTON-ROLON (5)<br>JOSHUA ISRAEL PAGAN ZAPATA (6)<br>DOMINGO VILLAFANE MARTINEZ, III (7)<br>LUIS JAVIER COLLAZO ROSADO (8)<br>   A.K.A. "LUISITO"<br>MICHAEL LNU (9)<br>CRISTIAN DAVID CRUZ-RODRIGUEZ (10) | **TO BE FILED UNDER SEAL**<br><br>NO. **3-18CR-235-S**<br><br> |

### SEALED INDICTMENT

The Grand Jury Charges:

Count One
Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance
(Violation of 21 U.S.C. § 846)

Beginning on or about August 5, 2016, and continuing through the filing date of

the indictment, in the Dallas Division of the Northern District of Texas and elsewhere,

**NELSON PABON, JEAN LOUI VARGAS-MALAVE, JUAN CAMACHO**

**MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY", RUBEN BENITEZ-**

**MATIENZO, JOSE LUIS GASTON-ROLON, JOSHUA ISRAEL PAGAN**

**ZAPATA, DOMINGO VILLAFANE MARTINEZ, III, LUIS JAVIER COLLAZO**

Indictment - Page 1

**ROSADO a.k.a. "LUISITO", MICHAEL LNU,** and **CRISTIAN DAVID CRUZ-RODRIGUEZ**, defendants herein, and others both known and unknown, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, with each other and with other persons both known and unknown, to commit certain offenses against the United States, to-wit: to possess with the intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii).

## MANNER AND MEANS

During the conspiracy alleged herein, it was part of the conspiracy that one or more of the defendants and coconspirators would:

1. Acquire kilogram amounts of a substance that was represented to be and that the defendants and coconspirators believed to be methamphetamine;

2. Arrange for the transportation and delivery of kilogram amounts of a substance that was represented to be and that the defendants and coconspirators believed to be methamphetamine through the Dallas/Ft. Worth International Airport and onto commercial airline flights by:

   a. utilizing a position of employment at the Dallas/Ft. Worth International Airport to bypass security, or

   b. contacting an individual or individuals that they knew had a position of employment at the Dallas/Ft. Worth International Airport in order

    to get that individual or individuals to help bypass security measures at the Dallas/Ft. Worth International Airport, or

  c. aiding an individual or individuals that they knew in bypassing security measures at the Dallas/Ft. Worth International Airport.

3. Transport kilogram amounts of a substance that the defendants and coconspirators believed to be methamphetamine on commercial airline flights from the Northern District of Texas to various locations throughout the United States and deliver the substance in exchange for payment;

4. Accept payment for the transportation and delivery of the substance that was represented to be, and that the defendants and coconspirators believed to be, methamphetamine in two parts, half up front, and half after transportation via commercial airline was successfully completed;

5. Coordinate the transportation, distribution, and delivery of kilogram amounts of the substance that the defendants and coconspirators believed to be methamphetamine with persons both known and unknown to the Grand Jury within the Northern District of Texas and elsewhere;

6. Utilize vehicles, homes, and communication facilities, including telephones and cellular telephones, to discuss, negotiate, and facilitate the success of the conspiracy;

7. Act as "look outs" or engage in counter-surveillance to bypass security measures at the Dallas/Ft. Worth International Airport; and,

8. Act as "look-outs" or engage in counter-surveillance to become aware of

any police presence.

## OVERT ACTS

1. In furtherance of the conspiracy alleged in Count One of the Indictment, **RUBEN BENITEZ-MATIENZO** and **JOSE LUIS GASTON-ROLON**, on or about September 29, 2016, met with officers acting in an undercover capacity (hereafter referred to as undercover officers) and discussed placing luggage containing purported crystal methamphetamine onto a commercial airplane at Dallas/Ft. Worth International Airport. **RUBEN BENITEZ-MATIENZO** and **JOSE LUIS GASTON-ROLON** agreed to send the substance represented to be crystal methamphetamine to Newark Liberty International Airport in Newark, New Jersey in exchange for a fee of $1500 per kilogram.

   a. On or about September 29, 2016, **RUBEN BENITEZ-MATIENZO** and **JOSE LUIS GASTON-ROLON** bypassed security at the Dallas/Ft. Worth International Airport and shipped eight (8) kilograms of a substance that was represented to be methamphetamine to Newark Liberty International Airport in Newark, New Jersey.

   b. The substance represented to be methamphetamine was loaded onto American Airlines flight number 0952 on or about September 30, 2016. The flight departed Dallas/Ft. Worth International Airport and travelled to Newark Liberty International Airport in Newark, New Jersey. The eight (8) kilograms of the substance represented to be methamphetamine were collected by law enforcement in Newark, New Jersey.

2. In furtherance of the conspiracy alleged in Count One of the Indictment, **JOSE LUIS GASTON-ROLON** met with undercover officers and introduced **NELSON**

**PABON,** on or about November 10, 2016. During the meeting with undercover officers, **JOSE LUIS GASTON-ROLON** and **NELSON PABON** discussed the logistics and risks of transporting crystal methamphetamine, via commercial airline, from Dallas/Ft. Worth International Airport to Newark Liberty International Airport in Newark, New Jersey. **JOSE LUIS GASTON-ROLON** and **NELSON PABON** agreed to ship the substance represented to be crystal methamphetamine, via commercial airline, in exchange for a fee of $1500 per kilogram.

    a.    On or about November 10, 2016, **JOSE LUIS GASTON ROLON** and **NELSON PABON** bypassed security at Dallas/Ft. Worth International Airport and shipped eight (8) kilograms of a substance that was represented to be methamphetamine to Newark Liberty International Airport in Newark, New Jersey in exchange for $1500 a kilogram.

    b.    The substance represented to be methamphetamine was loaded onto American Airlines flight number 0952 on or about November 11, 2016. The flight departed Dallas/Ft. Worth International Airport and travelled to Newark Liberty International Airport in Newark, New Jersey. The eight (8) kilograms of the substance represented to be methamphetamine were collected by law enforcement in Newark, New Jersey.

    3.    In furtherance of the conspiracy alleged in Count One of the Indictment, **NELSON PABON** met with undercover officers, on or about May 23, 2017. During this meeting, **NELSON PABON** introduced **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI"** as **"ANTHONY"** and told an undercover officer he was a trusted

associate. **NELSON PABON** and **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** discussed transporting luggage containing purported crystal methamphetamine, via commercial airline, from Dallas/Ft. Worth International Airport to Newark Liberty International Airport in Newark, New Jersey, in exchange for $2000 per kilogram.

    a.    On or about May 25, 2017, **NELSON PABON** and **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** bypassed security at the Dallas/Ft. Worth International Airport and shipped ten (10) kilograms of a substance that was represented to be crystal methamphetamine to Newark Liberty International Airport in Newark, New Jersey via commercial airline.

    b.    The substance represented to be methamphetamine was loaded onto American Airlines flight number 1229 on or about May 25, 2017. The flight departed Dallas/Ft. Worth International Airport and travelled to Newark Liberty International Airport in Newark, New Jersey. The ten (10) kilograms of the substance represented to be methamphetamine were collected by law enforcement in Newark, New Jersey.

    4.    In furtherance of the conspiracy alleged in Count One of the Indictment, **NELSON PABON** met with undercover officers, on or about June 28, 2017, and introduced **DOMINGO VILLAFANE MARTINEZ, III** as a trusted associate who would be assisting in the transaction. During the meeting, **NELSON PABON** and **DOMINGO VILLAFANE MARTINEZ, III** discussed the logistics of transporting crystal methamphetamine via commercial airline. During the meeting with undercover officers, **NELSON PABON** told undercover officers that his organization could smuggle

**Indictment - Page 6**

anything onto a commercial airplane, including guns.

    a.    On or about June 28, 2017, **NELSON PABON** and **DOMINGO VILLAFANE MARTINEZ, III** took possession of ten (10) kilograms of a substance that was represented to be crystal methamphetamine, bypassed security, and shipped the substance represented to be crystal methamphetamine, via commercial airline, from Dallas/Ft. Worth International Airport to Newark Liberty International Airport in Newark, New Jersey in exchange for a fee of $2000 per kilogram.

    b.    On or about June 29, 2017, law enforcement collected the ten (10) kilograms of the substance that was represented to be crystal methamphetamine from Newark Liberty International Airport in Newark, New Jersey.

    5.    In furtherance of the conspiracy alleged in Count One of the Indictment, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** and **CRISTIAN DAVID CRUZ-RODRIGUEZ** met with undercover officers, on or about June 29, 2017. During the meeting, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** discussed bypassing security and smuggling contraband onto commercial aircraft at Dallas/Ft. Worth International Airport.

    a.    On or about August 2, 2017, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** and **CHRISTIAN DAVID CRUZ-RODRIGUEZ** met with undercover officers and told an undercover officer that they would ship six (6) kilograms of a substance that was represented to be crystal methamphetamine for a previously negotiated price of $1600 per kilogram.

Indictment - Page 7

b. On or about August 3, 2017, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** and **CRISTIAN DAVID CRUZ-RODRIGUEZ** took possession of the substance that was represented to be crystal methamphetamine. The substance was placed on American Airlines flight 632 and sent to Charlotte, North Carolina.

c. On or about August 3, 2017, law enforcement officers collected the substance that was represented to be crystal methamphetamine in Charlotte, North Carolina.

6. In furtherance of the conspiracy alleged in Count One of the Indictment, **NELSON PABON** met with undercover officers, on or about August 2, 2017, and introduced **LUIS JAVIER COLLAZO ROSADO a.k.a. "LUISITO"** as one of his "guys." At the meeting, **NELSON PABON** offered to ship narcotics to other airports in addition to the usual shipments to Newark International Airport.

a. On or about August 3, 2017, **NELSON PABON** and **LUIS JAVIER COLLAZO ROSADO a.k.a. "LUISITO"** took possession of a backpack containing ten (10) kilograms of a substance that was represented to be crystal methamphetamine. **NELSON PABON** removed the kilograms from the backpack and counted them in front of **LUIS JAVIER COLLAZO ROSADO a.k.a. "LUISITO"** and undercover officers. The substance that was represented to be crystal methamphetamine was shipped via commercial airline from Dallas/Ft. Worth International Airport to Newark Liberty International Airport, in Newark, New Jersey, in exchange for a fee of $2000 per kilogram.

Indictment - Page 8

  b. On or about August 3, 2017, **NELSON PABON** informed undercover officers that flight 952 was cancelled. **NELSON PABON** told undercover officers there was a new route and that he would keep them informed. The new flight was American Airlines Flight 2390 with a scheduled departure time of 10:20 a.m. and a scheduled arrival time of 2:46 p.m.

  c. Law enforcement officers collected the backpack containing the ten (10) kilograms of the substance that was represented to be crystal methamphetamine at Newark Liberty International Airport in Newark, New Jersey.

  7. In furtherance of the conspiracy alleged in Count One of the Indictment, **NELSON PABON** met with undercover officers, on or about February 6, 2018, and introduced **JEAN LOUI VARGAS-MALAVE** and **JOSHUA ISRAEL PAGAN ZAPATA**. During the meeting, undercover officers informed **JEAN LOUI VARGAS-MALAVE** and **JOSHUA ISRAEL PAGAN ZAPATA** that they were giving them crystal methamphetamine to smuggle on airplanes. During the meeting, **JEAN LOUI VARGAS-MALAVE** and **JOSHUA ISRAEL PAGAN ZAPATA** told undercover officers what they did at the Dallas/Ft. Worth International Airport.

  a. In a private meeting with an undercover officer, **NELSON PABON** was asked if he was willing to ship plastic explosives in the next shipment of drugs. **NELSON PABON** agreed to ship the explosives in exchange for a fee of $2500.

  b. **NELSON PABON** subsequently took possession of ten (10) kilograms of a substance that was represented to be crystal methamphetamine. **NELSON PABON** agreed to send the ten (10) kilograms of the substance that was

represented to be methamphetamine for a fee of $2000 per kilogram plus an extra $4000 for introducing **JEAN LOUI VARGAS-MALAVE** and **JOSHUA ISRAEL PAGAN ZAPATA** to undercover officers. The undercover officer instructed **NELSON PABON** to send the narcotics on the usual flight to Newark, New Jersey.

c.  On February 7, 2018, law enforcement officers collected the ten (10) kilograms of the substance that was represented to be crystal methamphetamine at Newark Liberty International Airport in Newark, New Jersey.

8.  In furtherance of the conspiracy alleged in Count One of the Indictment, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** met with undercover officers, on or about February 7, 2018, and introduced **MICHAEL Last Name Unknown (LNU)** as a person that would be assisting in getting a bag onto a commercial airline flight. **MICHAEL LNU** told an undercover officer that he had been informed that the bag contained a quantity of methamphetamine.

a.  On or about February 7, 2018, **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** and **MICHAEL LNU** took possession of four (4) kilograms of a substance that was represented to be methamphetamine. **JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY"** and **MICHAEL LNU** agreed to facilitate the shipment of the substance represented to be methamphetamine in exchange for $1500 per kilogram.

b.  The four (4) kilograms of the substance that was represented to be methamphetamine was shipped via commercial airline to Sky Harbor Airport in Phoenix, Arizona.

9. In furtherance of the conspiracy discussed in Count One of the Indictment, **NELSON PABON** discussed the following on March 7, 2018:

a. Transporting drugs through the Dallas/Ft. Worth International Airport via commercial airline and discussed the logistics involved in the operation.

b. Discussed placing "kilos" (of a controlled substance) on a sofa at a residence.

c. During the meeting, **NELSON PABON** discussed that there would be "thirteen" (kilograms of a controlled substance) in the next shipment and a quantity of C-4. **NELSON PABON** assured another person that the C-4 would not explode. **NELSON PABON** discussed that the fee for shipping the C-4 would be $5500. **NELSON PABON** then calculated that the total fee for the shipment (of the controlled substance and the C-4) would be $31,500.

*All in violation of 21 U.S.C. § 846, the penalty for which is found at 21 U.S.C. § 841(b)(1).*

## FORFEITURE NOTICE
21 U.S.C. § 853(a) and 21 U.S.C. § 881(a)

Upon conviction for any of the offenses alleged in Count One of this Indictment and pursuant to 21 U.S.C. § 853(a), the defendants, **NELSON PABON, JEAN LOUI VARGAS-MALAVE, JUAN CAMACHO MELENDEZ a.k.a. "KENDO KAPONI", a.k.a. "ANTHONY", RUBEN BENITEZ-MATIENZO, JOSE LUIS GASTON-ROLON, JOSHUA ISRAEL PAGAN ZAPATA, DOMINGO VILLAFANE MARTINEZ, III, LUIS JAVIER COLLAZO ROSADO a.k.a. "LUISITO", MICHAEL LNU,** and **CRISTIAN DAVID CRUZ-RODRIGUEZ** shall forfeit to the United States of America any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the respective offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the respective offense.

A TRUE BILL

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

*/s/*

for: George Leal
Assistant United States Attorney
Texas State Bar No. 00794150
1100 Commerce St., Third Floor
Dallas, Texas 75242
Telephone: 214.659.8600
Facsimile: 214.659.8803
E-mail: george.leal@usdoj.gov

*/s/*

John Kull
Assistant United States Attorney
Texas Bar No. 00791057
1100 Commerce St., Suite 300
Dallas, Texas 75242
Telephone: 214.659.8600
Facsimile: 214.659.8803
E-mail: jkull@usdoj.gov

*/s/*

John J. de la Garza III
Assistant United States Attorney
State Bar No. 00796455
1100 Commerce, Suite 300
Dallas, Texas 75242
214.659.8682
John.delagarza@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

NELSON PABON (1)
JEAN LOUI VARGAS-MALAVE (2)
JUAN CAMACHO MELENDEZ (3)
A.K.A."KENDO KAPONI", A.K.A. "ANTHONY"
RUBEN BENITEZ-MATIENZO (4)
JOSE LUIS GASTON-ROLON (5)
JOSHUA ISRAEL PAGAN ZAPATA (6)
DOMINGO VILLAFANE MARTINEZ, III (7)
LUIS JAVIER COLLAZO ROSADO (8) A.K.A. LUISITO
MICHAEL LNU (9)
CRISTIAN DAVID CRUZ-RODRIGUEZ (10)

SEALED INDICTMENT

21 U.S.C. § 846
Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance

21 U.S.C. § 853(a) and 21 U.S.C. § 881(a)
Forfeiture Notice

1 Count

A true bill rendered

DALLAS                                                                                   FOREPERSON

Filed in open court this 8th day of May, 2018.

---

**SEALED Arrest Warrant to be Issued for all 10 defendants**

---

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending